IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DUANE PHILIP GOODSON,

    Petitioner,

v.                              Civil Action No. 3:17CV490

DIRECTOR OF VDOC,

    Respondent.

**MEMORANDUM OPINION**

Duane Phillip Goodson, a Virginia prisoner proceeding pro se, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 2.). In his § 2254 Petition, Goodson argues that he is entitled to relief on the following ground:

> Claim One:    "The trial court abused its discretion in sentencing [Goodson] to armed robbery instead of robbery." (Id. at 6.)[1]

Respondent has moved to dismiss on the ground that Goodson's claim is procedurally defaulted and barred from review here, or in the alternative, that his claim lacks merit. Goodson has responded. (ECF No. 18.)[2] The matter is ripe for disposition. For the reasons stated below, the Court will grant the Motion to Dismiss and dismiss the action.

---

[1] The Court corrects the capitalization and punctuation in the quotations from Goodson's submissions.

[2] Goodson submitted his Response twice. (See ECF Nos. 18, 19.)

## I.   PROCEDURAL HISTORY

In the Circuit Court for the City of Chesapeake, Virginia ("Circuit Court"), Goodson pled guilty,[3] pursuant to a written plea agreement, to one count of robbery and to one count of conspiracy to commit robbery, in violation of sections 18.2-22 and 18.2-58 of the Virginia Code.  (ECF No. 16-2, at 1.)  In exchange for his guilty plea, the Commonwealth agreed to nolle prosequi a charge of use of a firearm in the commission of a felony.  (Id.)  Goodson faced a sentence of between five years and life imprisonment for robbery and up to ten years for the conspiracy count.  See Va. Code Ann. § 18.2-58 (West 2018); id. § 18.2-10.  The Circuit Court sentenced Goodson to forty-five years of imprisonment with twenty-five years suspended.  (ECF No. 16-1, at 2.)  Goodson noted an appeal; however, the Court of Appeals of Virginia dismissed the appeal because he failed to file a timely petition for appeal.  (ECF No. 16-3, at 1.)

Thereafter, Goodson filed a state petition for a writ of habeas corpus in the Circuit Court.  In that petition, Goodson raised Claim One here, along with a second claim alleging ineffective assistance of counsel with respect to sentencing.  (ECF No. 16-6, at 2.)  As relevant here, the Circuit Court found that Goodson could have raised Claim One on direct appeal, but

---

[3] Goodson entered his pleas pursuant to North Carolina v. Alford, 400 U.S. 25 (1970).

did not, and, thus, found it barred by the rule in <u>Slayton v.</u> <u>Parrigan</u>, 205 S.E.2d 680 (Va. 1974). (<u>Id.</u> at 3.) Although Goodson noted an appeal, the Supreme Court of Virginia refused the appeal because Goodson failed to comply with the rules of that court. (ECF No. 2-3, at 1.)

## II. NO FEDERAL QUESTION

In Claim One, Goodson argues that "the trial court abused its discretion in sentencing [Goodson] to armed robbery instead of robbery." (§ 2254 Pet. 6.) As explained in Part IV.A, Goodson contends that the Circuit Court erroneously enhanced his sentence based on a sentencing guideline provision for his use of a firearm in the commission of robbery. Thus, distilled to its essence, Goodson is attempting to challenge his sentence pursuant to the discretionary Virginia sentencing guidelines. Goodson identifies no constitutional violation, and instead challenges the Circuit Court's determination of state law. The Circuit Court's alleged "error" provides no basis for federal habeas corpus relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"); <u>Slavek v. Hinkle</u>, 359 F. Supp. 2d 473,

483-84 (E.D. Va. 2005) (explaining that a challenge to a sentence under Virginia's discretionary sentencing guidelines fails to implicate a federal right). For this reason alone, Claim One will be dismissed.

To the extent that Goodson's claim could be seen to somehow implicate a federal right, the claim is barred from review here for the reasons set out below. In the alternative, the claim will be dismissed as frivolous.

### III.  EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal-state comity,'" and in the Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for

federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his [or her] claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his [or her] federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his [or her] claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

Here, on state habeas, the Circuit Court found that Goodson had procedurally defaulted Claim One pursuant to the rule in Slayton v. Parrigan, 205 S.E.2d 680, 682 (1974), because Goodson could have raised, but failed to raise, this claim at trial and on direct appeal. (ECF No. 16-6, at 3.) Slayton constitutes an adequate and independent state procedural rule when so applied. See Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997).[5] Goodson fails to advance any basis for excusing his default of Claim One. Nevertheless, in an attachment to his § 2254 Petition, Goodson argues that counsel was the cause of his default because counsel failed to file a direct appeal. (ECF No. 2-7, at 8.) Later in his rambling Response to the Motion to

---

[5] Goodson's claim is also barred from review here for several other reasons. First, the Supreme Court of Virginia dismissed the appeal of his habeas petition for failing to follow court rules pursuant to Va. Sup. Ct. R. 5:17(c) and (6). (ECF No. 2-3, at 1.) The Court notes that Virginia Supreme Court Rule 5:17(c) is an adequate and independent state procedural rule, providing yet another bar to his claim. See Yeatts v. Angelone, 166 F.3d 355, 363-65 (4th Cir. 1999). Second, as Respondent notes, to exhaust his claim, Goodson was required to have presented it to the Supreme Court of Virginia which he failed to do. If Goodson now attempted to present his claim to the Supreme Court of Virginia, that court would find it procedurally defaulted and time-barred pursuant to Section 8.01-654(A)(2) and 8.01-654(B)(2) of the Virginia Code. Both Virginia's statute of limitations for habeas actions and successive petition bars are adequate and independent procedural rules when so applied. See George v. Angelone, 100 F.3d 353, 363-64 (4th Cir. 1996); Sparrow v. Dir. Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006).

7

Dismiss ("Response," ECF No. 18), Goodson seemingly faults his counsel for failing to raise the claim during his sentencing or on appeal.[6] Thus, the Court generously construes Goodson to argue that ineffective assistance of trial and appellate counsel serves as the cause for the default of his claim. As discussed below, counsel cannot be faulted for failing to advance an argument so lacking in merit.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall

---

[6] While the Court believes that his claim is unexhausted and defaulted, in light of Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 569 U.S. 413 (2013), the fact that Goodson had no counsel at his "initial-review collateral proceeding" may also establish cause for the procedural default of these claims. Martinez, 566 U.S. at 16.

However, to the extent that Goodson faults appellate counsel for the default of his claim, the explicit language of Martinez applies to an inmate's default of a claim of ineffective assistance of trial counsel only. See Gaither v. Zook, No. 16CV64, 2017 WL 562419, at *4 (E.D. Va. Jan. 18, 2017) (citations omitted). Thus, the ineffective assistance of appellate counsel fails to serve as the cause for the default of this claim. However, this claim is readily dismissed on its merits and counsel cannot be faulted for failing to advance this frivolous argument.

'within the wide range of reasonable professional assistance.'"
Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting
Strickland, 466 U.S. at 689). The prejudice component requires
a convicted defendant to "show that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. A
reasonable probability is a probability sufficient to undermine
confidence in the outcome." Strickland, 466 U.S. at 694. In
analyzing ineffective assistance of counsel claims, it is not
necessary to determine whether counsel performed deficiently if
the claim is readily dismissed for lack of prejudice. Id.
at 697.

A.    Ineffective Assistance of Trial Counsel

Goodson faults counsel for failing to raise during
sentencing, his claim that the Circuit Court erred by sentencing
Goodson to armed robbery, as opposed to robbery. To understand
Goodson's claim, the Court must set forth a somewhat lengthy set
of facts, but in the end, it is readily apparent that his claim
is entirely frivolous and counsel cannot be faulted for failing
to raise it during sentencing. More importantly, counsel
actually advanced a version of this argument during Goodson's
sentencing, thus, Goodson fails to identify and the Court fails
to discern what more counsel could have done in this instance.

Goodson claims that "it was belief that when he signed and [accepted] the plea, that he was pleading to robbery of the bank and conspiracy to commit robbery, and not pleading to arm[ed] robbery." (Resp. ¶ 6.) Goodson believes that, because he only pled guilty to robber[y], the Circuit Court should not have been able to factor the use of a gun in the commission of the robbery into his sentence. From notations in his various submissions, Goodson also seemingly believes that, because the separate charge of use of a firearm in the commission of the robbery was dismissed, that he could no longer have his robbery sentence enhanced for use of a firearm. (See ECF No. 2-5, at 15.) Goodson asserts that use of a firearm in his sentencing guideline calculation, in essence, breached his plea agreement. (See ECF No. 2-7, at 5-7.) Goodson is simply incorrect.

In his Plea Agreement, Goodson pled guilty to one count of robbery and to one count of conspiracy to commit robbery, in violation of Section 18.2-22 and 18.2-58 of the Virginia Code. (ECF No. 16-2, at 1.) Section 18.2-58 provides as follows:

> If any person commit robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of bodily harm, or by the threat of presenting firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony and shall be punished by confinement in a state correctional facility for life or any term not less than five years.

Va. Code Ann. § 18.2-58 (West 2018). Contrary to Goodson's suggestion, there is no distinction in the Virginia statute for robbery as opposed to armed robbery. The Court notes that the state court and counsel refer to this charge and conviction interchangeably as both robbery and "armed robbery" likely lending to Goodson's confusion. (See, e.g., Feb. 3, 2014 Tr. 4, ECF No. 16-4.)[7] To sustain Goodson's robbery conviction, the Commonwealth was required to prove "the taking, with the intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Clay v. Commonwealth, 516 S.E.2d 684, 686 (Va. Ct. App. 1999) (citation omitted). The Commonwealth was not required to prove that he used a firearm to sustain a conviction for robbery and there is no separate offense of "armed robbery." Rather, use of the firearm or simulated firearm was a sentencing factor that could be appropriately considered under the discretionary Virginia sentencing guidelines. See Jett v. Commonwealth, 540 S.E.2d 511, 511-13 (Va. Ct. App. 2001). Thus, use of the term "robbery" as opposed to "armed robbery" throughout the state proceedings is a distinction without a

---

[7] The Virginia Crime Code (VCC), used only for administrative purposes, also referred to it as "Robbery in a Bank - Use a Gun or Simulated Gun." (See ECF No. 16-1, at 1); Indictment 1, Commonwealth v. Goodson, No. 13-2117-00 (Va. Cir. Ct. Oct. 1, 2013).

difference because there is only one robbery statute in Virginia.

To the extent that Goodson challenges the scoring of use of a gun or simulated gun in his guidelines range, it was entirely within the Circuit Court's discretion whether to accept or reject this range, as the "sentencing guidelines are not binding on the trial court." Id. at 512 (citation omitted). Moreover, no matter how the state courts referred to his crimes of conviction, the evidence established that Goodson robbed and conspired to rob a bank with the use of a gun or a simulated gun sufficient to have the use of a firearm factored in to his guidelines range.

Goodson also agreed that he understood that the Commonwealth's evidence demonstrated that the robbery was with the use of a firearm or simulated firearm. In the Stipulation of Facts supporting his guilty plea, Goodson agreed that "the following evidence would be presented by the Commonwealth and [was] sufficient for a finding of guilt:"

> On 8/12/13, Duane Goodson drove Sandra Fenton (aka Sandra Treynor) in a green Lexus with license plate WSB-4611 to the Wells Fargo Bank located at 821 N. Battlefield Blvd. in the City of Chesapeake. Goodson and Fenton discussed robbing banks prior to their arrival. Goodson told Fenton to write a note, give it to the teller, and get the money. Goodson told Fenton to have the money wraps removed, so they didn't give her a dye pack. Goodson told Fenton what to write in the note. Fenton went into the bank and handed the note to Beverly Goodwyn, a teller at the

Wells Fargo Bank. While inside the bank, Fenton kept her hand in her purse. Goodwyn only read part of the note that stated, "I will kill you if you don't give me the money. I will kill your family. I know where you live." Goodwyn believed Fenton had a gun in her purse from the way she was holding her hand in her purse. Fenton demanded the money without money wraps. Goodwyn gave Fenton the money from both drawers totaling $7,797.00. Fenton demanded the note back and left with the money. Fenton got into the car with Goodson, gave Goodson the money and leaned her seat all the way back at Goodson's direction. Goodson then drove away. The events inside the bank were recorded on video.

Fenton was arrested the same date. After being advised of Miranda, Fenton agreed to speak with police. Fenton admitted her role in the robbery. Fenton knew Goodson as "Drew". Fenton indicated Goodson was her friend and gave her heroin. Fenton indicated Goodson gave her heroin and said she had to do a favor for him which was to rob banks for him. Fenton stated she shot up two caps of heroin before entering the Wells Fargo. Fenton stated she had her hand in her purse to act like she had a gun. Fenton provided Goodson's phone number to police.

Goodson's cell phone records place Goodson in the area of the Wells Fargo at the time of the robbery. The Lexus was registered to Goodson's girlfriend whose family referred to Goodson as "Drew".

Goodson was charged with Robbery, Use of a Firearm in a Felony and Conspiracy to Commit Robbery.

(ECF No. 16-5, at 1-2.) During the guilty plea hearing, the Clerk indicated that Goodson was entering guilty pleas to "feloniously rob[bing] Wells Fargo Bank of U.S. currency" and "conspir[ing], combin[ing], confederat[ing], or agree[ing] with another to commit armed bank robbery." (Feb. 3, 2014 Tr. 4.) Goodson heard that recitation of his pleas and agreed that he was indeed guilty of the charges. The Court then explained to Goodson that the maximum penalty for "robbery in Virginia is

life" and conspiracy was ten years of imprisonment and Goodson agreed that the understood "that a judge could decide, if the evidence warranted, that you be sentenced to life, plus ten years." (Feb. 3, 2014 Tr. 13-14.)

More importantly, contrary to Goodson's assertions, counsel actually argued during sentencing that Goodson pled guilty to robbery, not armed robbery, and thus, he should not receive added points in his sentencing guidelines calculation for use of a gun or simulated gun. (Oct. 2, 2014 Tr. 23-30.) A Presentence Investigation Report ("PSR") was prepared which indicated that Goodson was convicted of "Robbery Bank w/Use Of Gun Or Simulated Gun" (PSR 2), and because the robbery was of a "[b]ank or business with gun or simulated gun," his score was 168, as opposed to 84 for a robbery offense without a gun or simulated gun. (PSR Section C.) The PSR indicated that the sentencing range recommended by the guidelines was fourteen years and five months to twenty-two years and seven months of incarceration for the substantive robbery count. (PSR Sentencing Guidelines Cover Sheet 1.)[8] During sentencing, counsel argued,

_____

[8] Respondent points to a different version of the PSR Sentencing Guidelines Cover Sheet that Goodson submitted with his § 2254 Petition that indicates that Goodson received 84 points and that he did not receive a firearm enhancement. (ECF No. 2-5, at 12-13.) This version is undated and appears to have been prepared by the Assistant Commonwealth's Attorney. (See

Looking at the plea agreement, he's charged with -- this is the important part, I guess, of my argument is that this is what Duane gets to see. Duane gets to see the plea agreement that says, Robbery, conspiracy to commit robbery. It doesn't say robbery with a firearm. It doesn't say robbery with a simulated firearm. Looking at the stipulation of facts, which he signed, . . . agreeing that this would be their evidence, not agreeing this is what took place.

(Oct. 2, 2014 Tr. 23.)[9]

The Court explained that it had

heard that argument before . . . but here's where we go to: The answer is in the book itself, in the guidelines book. On page 14 of my copy, weapon factor rules, [a]n offender does not have to be charged or convicted with the use of a firearm or weapon in order to score this factor. Weapon-related factors are scored if the offender, uncharged participant, or codefendant, used, brandished, or threatened to use a weapon during the commission of any offense. Weapon factors are scored for all offenses of . . . conviction, not just for the primary offense. The firearm, article, or device does not have to be in operating order to be scored. If the victim believed the item was an actual weapon, score the type of weapon from the victim's perspective.

---

id. at 12.) According to this version, Goodson's sentencing range was fifteen years to twenty-three years and seven months. (Id.) The Circuit Court acknowledged the two different versions of the PSR at sentencing, and noted that the disparity in sentencing ranges was "a very small increase." (Oct. 2, 2014 Tr. 22.)

[9] Counsel attempted to advance an argument at sentencing that by pleading guilty, Goodson only agreed that the Statement of Facts was the Commonwealth's evidence, not that the facts therein were true. Despite counsel's attempt to twist words, Goodson agreed that the Stipulation of Facts was "sufficient for a finding of guilt." (ECF No. 16-5, at 1.) To the extent that Goodson now attempts to argue that he never agreed that his-codefendant acted like she had a gun, that is belied by the record.

So it's basically taken for guideline purposes that if it said there was a gun used and somebody said they saw a gun used, even if he doesn't plead to the gun charge, it's still a factor that has to be scored in said guidelines. . . .

(Oct. 2, 2014 Tr. 25-26.) The Court explained that it would "take into consideration [counsel's] argument, but [it thought] the guidelines as submitted by [the Commonwealth] are correct . . . ." (Oct. 2, 2014 Tr. 29-30.) Thus, counsel effectively raised the argument that Goodson's claims should have been made. The Circuit Court found that counsel's argument notwithstanding, the discretionary guidelines were correctly calculated and the firearm should be factored into that calculation. Goodson fails to identify what more counsel could have argued to convince the Circuit Court that Goodson should not have had the use of a gun or simulated gun factored into his discretionary guideline sentencing range.[10]

---

[10] In his rambling and nearly incoherent Response, Goodson attempts to tack on an argument that counsel misled him about whether he was pleading guilty to robbery or to armed robbery and that counsel was not prepared for sentencing. (Resp. ¶¶ 5-7.) To the extent that these arguments amount to new claims, they were not raised on the face of his § 2254 Petition and are not properly before the Court. Nevertheless, these allegations lack merit. According to Goodson, counsel misled him because he explained to Goodson that he pled guilty to robbery, not armed robbery. (Id. ¶ 5.) However, that statement was accurate. To the extent that Goodson faults counsel for being unprepared for sentencing, he fails to adequately and clearly identify why he believes counsel was unprepared and therefore ineffective under the Sixth Amendment. Instead, he presents conclusory statements that counsel was ineffective without any supporting argument. At his most specific, he indicates that there were two versions of the sentencing guidelines, and one version had a slightly

16

Because Goodson's claim of ineffective assistance of trial counsel lacks merit, it fails to serve as the cause for default of Claim One. Moreover, as explained above, Claim One simply lacks merit.

## B. Ineffective Assistance of Appellate Counsel

Goodson also faults counsel because, although he noted an appeal, he failed to perfect the appeal, and therefore caused the default of Claim One. (ECF No. 2-7, at 8.) Goodson claims that he clearly indicated to counsel that "he wanted to appeal his criminal armed robbery sentence." (Id.) However, even if appellate counsel was somehow deficient for failing to perfect the appeal, the underlying challenge lacks merit, and thus, Goodson was not prejudiced. As previously explained, the Circuit Court did not illegally alter the terms of his plea agreement by factoring in the use of a firearm in the discretionary guidelines calculation. Moreover, "if the sentence was within the range set by the legislature [for the

---

higher sentencing range on the "high end." (Id. ¶ 9.) In support for his claim, Goodson references a statement by the Circuit Court in which the Circuit Court offered counsel a continuance, but this has nothing to do with his offense of conviction or his guilty plea. (Id.) Rather, the Circuit Court and counsel were discussing Goodson's extensive criminal history and whether certain convictions, probation violations, or pending criminal proceedings in other jurisdictions should count in Goodson's sentencing calculation. (Oct. 2, 2014 Tr. 22.) Goodson fails to demonstrate any deficiency of counsel or resulting prejudice.

crime of which the defendant was convicted], an appellate court will not interfere with the judgment." Jett, 540 S.E.2d at 513 (alteration in original) (citation omitted) (internal quotation marks omitted); see Hunt v. Commonwealth, 488 S.E.2d 672, 405 (Va. Ct. App. 1997) (citation omitted) (internal quotation marks omitted) (explaining that the misapplication of the Virginia sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief"). Here, Goodson faced a sentence of no less than five years of incarceration and up to life imprisonment on the robbery count. His sentence of forty-five years, with twenty-five years suspended, is clearly within the statutory range. Even if counsel had raised this issue on appeal, the Court of Appeals of Virginia would have rejected it soundly because it was not an appealable issue. See Jett, 540 S.E.2d at 513. Thus, counsel was not deficient for failing to raise this issue on appeal, and Goodson was not prejudiced. Accordingly, appellate counsel cannot serve as the cause for Goodson's default of Claim One. Thus, Claim One is defaulted and barred from review here.

## V. CONCLUSION

Accordingly, Respondent's Motion to Dismiss (Docket No. 14) will be granted. Goodson's claim will be dismissed and the

§ 2254 Petition will be denied. The action will be dismissed.

A certificate of appealability will be denied.[11]

The Clerk is directed to send copy of the Memorandum Opinion to Goodson and counsel of record.

It is so ORDERED.

/s/ _RE__

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July _10_, 2018

---

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Goodson fails to make this showing.